**People of the State of Illinois, Plaintiff-Appellee, v. Michael A. DeSimone, Defendant-Appellant.**

**Gen. No. 50,113.**

First District, Fourth Division.
January 28, 1966.

Michael A. DeSimone, pro se, of Joliet, appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James M. Sammons, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

In January 1964 the defendant, Michael A. DeSimone, was convicted of murder after a jury trial and sentenced to the penitentiary for not less than twenty nor more than forty years. Defendant appealed to the Supreme Court which transferred the case to this court. In his pro se presentation defendant contends that the court erroneously, over objection, allowed his confession to be introduced into evidence and that the court committed various additional prejudicial errors, thereby depriving him of a fair trial.

In 1956 defendant was sentenced to the penitentiary for the crime of auto larceny and while incarcerated assaulted another prisoner and a guard. Upon the expiration of his term defendant was committed to the Chicago State Hospital for the mentally ill in December of 1959 as a person "in need of mental treatment." While a patient therein defendant and another patient, Kenneth Anderson, left the hospital on May 4, 1960, and allegedly committed the crime of murder to which he (defendant) confessed on May 6.[1] At no time did the defendant request an attorney. On October 31, 1960, defendant was convicted of that crime upon a plea of guilty and was sentenced to a term of ninety-nine years in the penitentiary. That conviction was reversed and remanded by the Supreme Court on the ground that the trial court should not have accepted the plea of guilty without first holding

---

[1] A joint statement was taken from Kenneth Anderson and the defendant in addition to an individual statement taken from the defendant. . .

a sanity hearing (People v. DeSimone, 28 Ill2d 72, 190 NE2d 831).

The record on this appeal shows that a sanity hearing to determine defendant's competence to stand trial was conducted prior to trial wherein the jury found that defendant "was at the time of impaneling of the jury and now is sane." There is no complaint of error in that hearing.

■ Defendant urges three grounds in support of his contention that the confession should have been suppressed. First, relying upon Escobedo v. Illinois, 378 US 478, he asserts for the first time in his appeal that at the time of his confession he was not apprised of his right to remain silent and of his right to consult with an attorney. Since defendant never requested counsel the ruling in Escobedo is inapplicable. The doctrine of Escobedo does not require the rejection of a voluntary confession merely because the defendant was not affirmatively advised of his right to counsel and of his right to remain silent. People v. Miller, 33 Ill2d 439, 211 NE2d 708; People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33. Furthermore, since no such claim was raised in the trial court, the applicability of Escobedo cannot be considered for the first time on review. People v. Buckholz, 32 Ill2d 482, 207 NE2d 451.

The second ground urged by defendant is that since he was a patient in the Chicago State Hospital at the time of his confession he was non compos mentis at that time. A pretrial hearing was held upon defendant's motion to suppress his confession wherein he alleged solely that at the time thereof he was non compos mentis. The prosecution presented five witnesses who testified that defendant was sane at the time of his confession but the defendant presented no evidence that he was insane. The court held that the defendant was sane at the time of his confession and denied defendant's motion to suppress the confession. A hearing was also held during the trial

(before a different judge than at the first hearing) upon defendant's motion to exclude his confession from consideration as evidence on the ground that he was non compos mentis at the time of the confession and consequently that the confession was involuntary. The prosecution's evidence was substantially the same as in the prior hearing [2] and the court again determined that defendant was sane at the time of his confession and denied the motion to exclude the confession. The record shows that the defendant was committed to the Chicago State Hospital as a person "in need of mental treatment." The testimony of Dr. Raul Zaldivar, the clinical director of the hospital during defendant's period of confinement and the supervisor of the team that managed him during that time, was substantially as follows:

> It [the diagnosis of the defendant's mental condition in December of 1959] was sociopathic personality, anti-social reaction. The diagnosis is a classification pertaining to a personality type. Sociopathic personality is a social diagnosis in more sense than it is mental illness or psychiatric diagnosis. It implies the type of personality which is characterized by inability to learn from experience and inability to accept moral or social codes of society . . . . It does not contain deviations of thoughts or hallucinations or delusions or abnormalities of perception . . . . On the basis of the record, my opinion is that he was sane in December of 1959.

The witness further testified that defendant was sane continuously during the period of December 12, 1959, to May 6, 1960; that on May 6 (the date of the confession)

---

[2] Assistant State's Attorney Michael Greenfield, who testified as to defendant's sanity in the first hearing, did not testify at the second hearing. Dr. William H. Haines, a psychiatrist, testified only at the second hearing and stated that defendant had a character disorder but was sane.

254

he examined the defendant at the request of the Assistant State's Attorney and concluded that at that time the defendant was sane, knew what he was doing, understood what he was saying, was legally responsible, and could cooperate with counsel.

Dr. Argelia Heller testified that she was completing her psychiatric training as a resident at the Chicago State Hospital during April, May and June of 1960; that she observed the behavior of the defendant at approximately fifteen group ward meetings; that an average of 45 to 50 patients attended each meeting which lasted one hour; that she is trained to give a medical opinion on the sanity of a person from these observations; and that from her observations she concluded that the defendant was sane during the entire time.

Jerome Lillian testified that he is a psychiatric social worker and was employed at the hospital for the period of December, 1959, through May, 1960; that he observed the defendant's behavior at the aforementioned ward meetings and in addition personally interviewed the defendant during that period of time. He further testified that:

> There was never any question in my mind as to his sanity. There was no inappropriate behavior at the time I saw Mr. DeSimone in the hospital. It was my opinion that Michael was sane.

The witness stated that his opinion includes the period up to the date on which defendant left the hospital.

Nina Mason, an activities therapist's aid (not a psychiatrist), testified that she had been employed at the Chicago State Hospital for eight years, which included the period of defendant's confinement, and that in her opinion defendant was sane.

 Confessions are competent evidence only when voluntarily made, and the question of their competency is basically one for the trial court. In determining whether

a confession by an accused is admissible the court need not be convinced beyond a reasonable doubt of its voluntary character. People v. Gavurnik, 2 Ill2d 190, 117 NE2d 782. On review the decision of the court on the question of whether a confession was voluntary will not be disturbed unless manifestly against the weight of the evidence or unless the court has clearly committed an abuse of discretion. People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33; People v. Di Gerlando, 30 Ill2d 544, 198 NE2d 503. Since commitment to a mental institution does not necessarily indicate that the accused lacks the mental capacity to stand trial (Withers v. People, 23 Ill2d 131, 177 NE2d 203; People v. Woods, 26 Ill2d 557, 188 NE2d 1), that same commitment does not necessarily indicate that he lacked the mental capacity to voluntarily confess to the crime of murder. So long as the accused is capable of making a narrative of past events or of stating his own participation in the crime, his statements are admissible against him. People v. Townsend, 11 Ill2d 30, 141 NE2d 729. The mental subnormality on the part of one confessing to a crime does not of itself deprive the confession of its voluntary character. The confession remains admissible so long as the subnormality has not deprived the person in question of the capacity to understand the meaning and effect of the confession. People v. Townsend, supra. The testimony at both hearings on defendant's motions to suppress his confession amply supports the conclusion of the court in each instance that defendant was sane at the time of his confession, that the confession was voluntary, and that it should be admissible into evidence.

Defendant's third and final ground for excluding the confession is that it names three persons as witnesses thereto but bears the signature of only one; and that in addition, the confession is signed by Officer Steve Pizzello who is not listed thereon as a witness. From this assertion defendant contends that this confession (which

he signed) should not have been admitted into evidence, citing Illinois Revised Statutes, 1959, chapter 38, section 729.[3] That statute requires the defendant to be furnished with a list of witnesses to his confession. However, defendant does not allege that he was not furnished with the requisite list (defendant in fact admitted that he did receive a copy) but only that all parties named as witnesses on the confession did not affix their signatures thereto and that one extra signature appeared thereon. Therefore the statutory authority cited by defendant has no applicability to the instant case. Moreover, even if the requisite list was not furnished to defendant, the statutory requirement was waived by his failure to raise the necessary objection at trial. People v. Seno, 23 Ill2d 206, 177 NE2d 843; People v. Villalobos, 20 Ill2d 315, 169 NE2d 745.

 Defendant next contends that the court committed various prejudicial errors during the course of the trial which deprived him of a fair trial. First, defendant asserts that every fact of his life relevant to the defense of insanity is competent evidence. From this assertion defendant argues that the court erroneously refused to allow into evidence Exhibit 7, the entire record of the Chicago State Hospital pertaining to the defendant. However, a hospital record is admissible into evidence only after the laying of a proper foundation. Defendant introduced no evidence as to the authenticity of

---

[3] Section 729 provides in pertinent part:

Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this State by any person charged with any crime, a copy of such confession, if written, together with a list of the names and addresses of all persons present at the time such confession was made shall be given to the defendant or his counsel prior to arraignment. . . .

No confession shall be admitted as evidence in any case unless the confession and/or list of names and addresses of persons present at the time the confession was made is furnished as required by this section.

257

the entries in the record but urges that the entire record was properly authenticated because Dr. Zaldivar identified Exhibit 7 after he had, without objection, referred to portions thereof in his testimony. There was no testimony by those persons who made the innumerable entries in the record (or even as to who in fact made them), nor was there testimony that Dr. Zaldivar was either the custodian of the record or that the entries were made under his supervision. The hospital records were not authenticated and therefore were properly excluded from consideration as evidence. Stewart v. DuPlessis, 42 Ill App2d 192, 191 NE2d 622.[4]

 Second, defendant argues that his witness, James DeSimone, was improperly cross-examined by the prosecution. The direct testimony of the witness dealt only with his opinion that defendant was insane between June 1961 and the following December or January, which opinion was irrelevant because the crime was committed on May 4, 1960. The rambling cross-examination sought to bring out that at a prior sanity hearing, the purpose of which was to determine defendant's ability to stand trial, the witness had testified that defendant was sane. This was denied by the witness. Upon examining the confused questioning and cross-questioning on this immaterial issue (whether defendant was sane or insane a year after the crime and prior to the time of his trial), we find no prejudicial error.

Defendant next argues that the record shows that the prosecution, in the course of reading defendant's

---

[4] However, the court did, over objection, admit into evidence as defendant's Exhibits 8 and 9, two excerpts from the hospital record which were not authenticated: Exhibit 8, a "Release Progress Report" purportedly prepared by Dr. Groves B. Smith (Dr. Haines testified that the signature thereon was not that of Dr. Smith) and Exhibit 9, a letter purportedly written by Dr. Tacea of the hospital (who was in Mexico at the time of trial) to the Selective Service System stating that the hospital planned to send defendant to the Illinois Security Hospital.

confession to the jury, read portions thereof pertaining to unrelated offenses contrary to the direction of the court. However, the certified supplemental record clearly shows that there was a stenographic error in the transcription of the original record; that pursuant to instruction by the court the prosecution did not read to the jury any of the defendant's statement relating to his participation in another taxi robbery. Defendant claims that the supplemental record is a falsification of the actual proceedings and that the original record is correct but he did not make timely or proper objections to the supplemental record.[5] We find no merit in defendant's contention that the State violated the court's direction not to read to the jury that portion of the confession concerning unrelated offenses.

Defendant also argues that his motion for a directed verdict should have been granted in that the court erroneously construed section 6–2 of the Criminal Code of 1961 as respects insanity at the time of the commission of a crime (Ill Rev Stats 1961, c 38, § 6–2). That statute provides as follows:

(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of

[5] On June 30, 1965, the State moved for leave to file the supplemental record, after notice to defendant mailed on June 29. The hearing on the motion was set for July 7. Although defendant did not file objections nor send a communication to the court that he wished to do so, as provided by Rule 3(3) of the Rules of the Appellate Court of Illinois, First Judicial District, the motion was taken under advisement. On July 13, no objections or request for continuance being on file, the motion of the State was allowed. Thereafter the Clerk of the court received from defendant a "motion to dismiss and deny" the State's motion to file the supplemental record but leave to file these belated objections was never requested. Defendant did not move to vacate the order nor did he file a motion under Supreme Court Rule 27(9)(a) showing that the supplemental record was not true or correct; therefore, it must be taken as true and correct since it was properly certified by the reporter as required by that rule.

mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms "mental disease or mental defect" do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct.

The court, in denying defendant's motion, stated:

The Court must find with respect to your motion that your witness, Dr. Haines, testified, to the understanding of this Court, that what you had was a sociopathic personality or character disorder which manifested itself in essence by antisocial conduct which is expressly excluded from the type of mental defect we find in the statute.

I must, therefore, deny your motion.

In construing the above statute the court in People v. Miller, 33 Ill2d 439, stated at page 443, 211 NE2d 708, that:

We have carefully reviewed their testimony [the testimony of a clinical psychologist and a psychiatrist] and it indicates that defendant has a "personality disorder," "forms unrealistic judgments," and is "unable to evaluate situations that face him."

．．．．．

We think that the evidence offered falls far short of establishing a "mental disease or mental defect" within the meaning of the act. . . . In addition, the testimony of defendant at the trial, and his prior statements, effectively rebut any claim of insanity at the time of the crime, but on the contrary indicate he acted rationally.

Defendant introduced no evidence to establish the defense of insanity under section 6–2 of the Criminal Code of

1961. However, although both the State and defendant proceeded under the assumption that the test of insanity was governed by section 6–2, we would point out that section 6–2 was adopted in 1961 but the alleged crime was committed in 1960. Under section 4 of the Construction of Statutes Act (Ill Rev Stats 1961, c 131, § 4) the law which was in effect at the time of the commission of the crime is controlling. However, defendant adduced no evidence whatsoever to establish the defense of insanity under the law in force at that time as expressed in People v. Carpenter, 11 Ill2d 60, 142 NE2d 11. In that case the court approved the following instruction to the jury:

> The Court instructs the jury that a safe and reasonable test in all cases of insanity is that whenever it appears from the evidence that at the time of doing the act charged the defendant was not of sound mind but affected with insanity and such affliction was the efficient cause of the act, and that he would not have done the act but for that affliction, he ought to be acquitted. But the unsoundness of mind, or affliction of insanity, must be of such a degree as to create an uncontrollable impulse to do the act charged by overriding the reason and judgment and obliterating the sense of right or wrong as to the particular act done or depriving the accused of the power of choosing between right and wrong.

Defendant's motion for a directed verdict was properly denied.

■ Defendant next argues that the prosecution, in its closing argument to the jury, erroneously stated that since defendant was sane at the time of the trial, he must have been sane at the time of the murder. Defendant's objection to these remarks was sustained but the jury was not at that time admonished to disregard the remarks in question. However, in its instructions to the jury the court stated:

261

> If, in putting in the evidence, or in argument, counsel for either party has made any statement not based upon the evidence, or if counsel made any statement which he afterwards withdrew, or which the court afterwards struck out, the jury should wholly disregard such statements.

Moreover, the defendant introduced no pertinent evidence that he was insane at the time of the commission of the crime. Consequently, if error was in fact committed it was not prejudicial. Other objections asserted here by the defendant as to the prejudicial nature of the closing argument by the prosecution are without foundation.

 Defendant's final contention is that four of the instructions to the jury by the court were erroneous. The State's Instruction No. 1, wherein the court gave the jury the definition of the crime of murder, is in the language of Illinois Revised Statutes, 1959, chapter 38, section 358, and was properly given. Instruction No. 5, objected to by the defendant, provides as follows:

> The Court instructs the jury, that if you believe from the evidence beyond a reasonable doubt that at the time of committing the alleged crime (if you believe from the evidence beyond a reasonable doubt that he did commit such crime) the defendant was able to distinguish right from wrong as to the particular act done and was able to choose between them and was able to control his action accordingly, then you can not acquit him on the ground of insanity.

Defendant argues that under this instruction he could not be acquitted on the ground of insanity unless he was unable to distinguish right from wrong *and* was also unable to choose between them and act accordingly whereas under the law if *either* of the above elements is lacking he was entitled to be found not guilty because of insanity, citing People v. Munroe, 15 Ill2d 91, 154 NE2d 225. De-

fendant, however, misinterprets the instruction as given. The instruction is unartfully drawn and merely states in the negative that the defendant cannot be acquitted on the ground of insanity if both of the requisite elements of sanity are shown. The instruction does not state any rule as to when the defendant *can* be acquitted. Since the basic test applied in this instruction is founded upon People v. Carpenter, supra, (heretofore discussed) it was not error to give it. The State's Instruction No. 15 in the language of section 6–2 of the Criminal Code of 1961, and defendant's Instruction No. 1 and the State's Instruction No. Zero encompassing the test of section 6–2, were erroneously given inasmuch as that section is not applicable to the instant case as we have heretofore pointed out. However, since defendant adduced no evidence that would tend to establish the defense of insanity either under section 6–2 or under the law in effect prior to the effective date of section 6–2, the error was harmless.

 Therefore we conclude that the defendant's confession was properly admitted into evidence, that the evidence warranted the finding of the jury that defendant was sane at the time of the murder and that defendant received a fair trial.

The judgment of the trial court is affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.