THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MERRI TENNYSON, Defendant-Appellant.

Second District    No. 78-26

Opinion filed May 14, 1979.

Mark Heyrman, of Mandel Legal Aid Clinic, of Chicago, for appellant.

Gene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with murder, found not guilty by reason of insanity, and subsequently found to be in need of mental treatment. She was ordered admitted to the Department of Mental Health for a period not to exceed 11 years and 3 months, pursuant to an amendment to section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4). Although this amended statute was in force at the time of the defendant's trial, it had not been amended at the time of the alleged offense. On appeal, the defendant attacks the trial court's finding of not guilty by reason of insanity on grounds of insufficiency of evidence, error in the admission of evidence and an asserted

incompetence of defendant's trial counsel. She also argues that the trial judge erred in applying the amended section 5—2—4 retroactively. While the defendant makes a number of further contentions, it is unnecessary for us to explore them under our view of this case.

The grisly and tragic events which led to this case occurred on November 25, 1976. The defendant, a 55-year-old woman, had been employed by an elderly couple, Mr. and Mrs. Beljean, as a housekeeper. Mr. Beljean died two weeks prior to November 25, 1976. On November 25, the Elgin police received a phone call from someone who said, "I attempt murder * * * send the police over." The communications' officer later identified the voice of the caller as that of the defendant. The caller became incoherent but not before the police obtained her location. Police units were dispatched to the scene.

When the police arrived at the Beljean home, they found Mrs. Beljean lying in a hallway. There was a considerable amount of blood on the floor, carpeting and walls around her body. Mrs. Beljean was alive, but her eyes had been gouged nearly out of their sockets and she had a fractured wrist. The defendant was also present clad only in a bra and pantyhose. The defendant had blood stains on her feet, hands and body and there were indications that she had attempted to wash some of the blood off. One of the defendant's fingernails was ripped almost completely off the finger and what appeared to be blood and hair was stuck to the finger. The defendant was incoherent and it was only after some difficulty that the officers could handcuff and restrain her in a chair. She was transported to the police station and later taken to the Elgin Mental Health Center, while Mrs. Beljean was rushed to a hospital.

Detective Gonzales went to the hospital and interviewed Mrs. Beljean. His testimony regarding this interview was admitted without objection at trial, although no effort was made to qualify Mrs. Beljean's statements as a dying declaration. Mrs. Beljean told Gonzales that the defendant attacked her while she was asleep, dragged her out of bed, knocked her to the floor, choked her and stuck her fingers in Mrs. Beljean's eyes. Mrs. Beljean told Gonzales that she had no idea why the defendant attacked her and thought that the defendant had just "gone off her rocker." Mrs. Beljean subsequently died during an operation attempting to correct the extensive damage to her eyes.

On November 29, 1976, Detective Gonzales went to the Elgin Mental Health Center with Detective Danielson to interview the defendant. The defendant was advised of her rights and she told the officers that Mrs. Beljean "was trying to frame her and put her in the hospital." She admitted attacking Mrs. Beljean, during the course of the interview, but the detectives testified that she made irrational statements and became

rambling and incoherent, so that the interview had to be terminated. Defendant's counsel did not object to the admission of testimony regarding this interview.

A number of expert psychiatric witnesses gave testimony. All expressed the opinion that the defendant was unable to understand the criminality of, or control, her behavior at the time of the offense.

A written psychiatric evaluation by Dr. Werner Tuteur was admitted into evidence by stipulation. This document included the doctor's summary of the defendant's account of the incident leading to Mrs. Beljean's death. The defendant had told Dr. Tuteur that Mrs. Beljean attacked her after the two argued and the two fell to the floor. The defendant could not remember what happened after that, except that she did remember calling the police.

■ The defendant's initial argument is that the evidence did not justify a finding of not guilty of murder by reason of insanity, in view of the defendant's claim, contained in Dr. Tuteur's report that she acted in self-defense. We do not believe the trial court was bound on this record to find that the defendant either reasonably or unreasonably acted in self-defense. Mrs. Beljean's advanced age, the physical strength and mobility that defendant displayed at the time of her arrest, and the nature of Mrs. Beljean's injuries would all tend to exclude any claim that Mrs. Beljean attacked the defendant or that the defendant acted for her own self-protection.

■■ The defendant's next argument is that the trial court committed reversible error when it admitted testimony regarding statements made by Mrs. Beljean at the hospital, and by the defendant to detectives on November 29, 1976, when the defendant was unquestionably suffering from severe mental illness. In the absence of plain error or any objection to this testimony by defense counsel, we do not believe that its admission warrants a reversal of the trial court's judgment. See, *e.g.*, 2 Ill. L. & Prac. *Appeal & Error* §529 (1953).

■■ The unobjected to admission of this testimony also forms the primary basis for the defendant's claim that she was denied the effective assistance of counsel by the incompetence of the public defender who represented her at trial. The defendant charges that her attorney simply abandoned any effort to raise any defense other than insanity. Obviously, this testimony, when taken in its entirety, supported the defendant's claim of insanity, which undoubtedly explains defense counsel's failure to object to its admission. Counsel's decision to concentrate solely upon the crucial insanity defense, as well as his failure to move for a substitution of judges, which the defendant also complains of, were tactical decisions which did not render counsel's representation of the defendant incompetent. *People v. Brittain* (1976), 35 Ill. App. 3d 1047.

Accordingly, we find no error in the conduct of the trial or regarding the fairness of the defendant's trial. We next turn to the post-trial proceedings.

The defendant argues that the trial judge erred in applying the amended section 5—2—4 of the Unified Code of Corrections retroactively. We agree.

Under section 5—2—4, prior to the recent amendment, it did not matter what offense the defendant was found not guilty of by reason of insanity; regardless of the offense, if the defendant was found to be in need of mental treatment, an order would be entered for commitment of the defendant "for an initial period not to exceed twelve months," which would have substantially the effect of a civil commitment; thereafter, the care, treatment and discharge of the defendant would be governed by the Mental Health Code. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—4.) Under the amended statute, persons found not guilty by reason of insanity and to be in need of mental treatment are admitted to the Department of Mental Health for an indefinite period of time, not to exceed:

> "* * * the maximum length of time that the defendant would have been required to serve * * * had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity. * * *" (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(b).)

Thus, the maximum period of commitment under the amended section 5—2—4 is determined by the offense of which the defendant was found not guilty of by reason of insanity, while the offense involved was not determinative of the maximum initial period of confinement prior to the amendment.

The amended section 5—2—4, which became effective August 1, 1977, after the alleged offense but prior to the defendant's trial, is different in other important respects from the statute which was in force on November 25, 1976. The amended section 5—2—4 expressly provides that a person admitted to the Department of Mental Health under this section, "shall not be permitted to be at large in the community in any manner, including but not limited to discharge or conditional or temporary release * * *." The section prior to the amendment did not contain such a stricture. Under section 5—2—4 before the amendment, the trial court lost jurisdiction over a defendant after commitment, and could not review a decision by the Department of Mental Health to release the person committed. (*E.g., People v. Adams* (1976), 35 Ill. App. 3d 810.) Under the amended section 5—2—4, the Department of Mental Health must inform both the State's Attorney and the court 30 days prior to any proposed release and the State or the court may, in effect, require a hearing prior to the release, with the hearing to be held within 30 days of

any motion for hearing. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(d).) Under the new statute, the court may order the Department of Mental Health not to release the defendant (Ill..Rev. Stat. 1977, ch. 38, par. 1005—2—4(i)). Further, under the amended section 5—2—4, under certain circumstances, the burden of proof is upon the person committed to show that he or she .is no longer in need of mental treatment. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(g).) Thus, under the amended statute, not only is the potential period of confinement by the Department of Mental Health longer than under the prior statute, but from the practical standpoint, it may be more difficult, in many cases, for a defendant to secure his or her release under the new statute.

■ Although there is dicta in one case which would seem to express a contrary view (*In re Langdon* (1977), 53 Ill. App. 3d 768, 773), and the court applied the statute retroactively in *People v. Coughlin* (1977), 53 Ill. App. 3d 23, in our opinion the differences between the amended and prior section 5—2—4 are such that it was error, under the circumstances, for the trial court to apply the statute retroactively in this case. Under section 4 of the construction-of-statutes act (Ill. Rev. Stat. 1977, ch. 131, par. 4), the law which was in effect at the time of the commission of the offense is generally controlling. (*People v. DeSimone* (1966), 67 Ill. App. 2d 249.) It has been held that "statutes and amendatory acts are presumed to operate prospectively unless the stautory language is so clear as to admit of no other construction." (*People v. Theo* (1971), 133 Ill. App. 2d 684, 687.) Although changes in a statute which relate only to procedures or remedies are normally held not to be violative of these principles and many of the changes in section 5—2—4 are undoubtedly merely procedural, there can be no question but that the amended statute had the substantive effect of at least potentially increasing the period that a person may be institutionalized under section 5—2—4. The application of the amended section here fixes a longer maximum term of institutionalization, since such a term is now linked to the nature of the charge against the defendant. The notice and hearing required by the amended statute could further delay an individual's release beyond the date when the Department of Mental Health determined that the individual was no longer in need of hospitalization. In addition, the statutory prohibition against allowing persons committed under the amended section 5—2—4 to be at large in the community has a potential substantive effect upon the nature of any confinement under the section. Thus, the prospective application of the amended section 5—2—4 in this case violated principles of statutory construction, and was analogous to an *ex post facto* imposition of a penalty. See *Lindsey v. Washington* (1937), 301 U.S. 397, 81 L. Ed. 1182, 57 S. Ct. 797.

Therefore, the judgment of the circuit court of Kane County finding

the defendant not guilty of murder by reason of insanity is affirmed; the order of said court ordering defendant admitted to the Department of Mental Health for a period not to exceed 11 years and 3 months is reversed, and the cause is remanded for entry of an appropriate dispositional order, in accordance with the statute in effect at the time of the offense.

Affirmed in part; reversed and remanded in part with directions.

WOODWARD and LINDBERG, JJ., concur.