THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD VIENS, Defendant-Appellant.

Second District   No. 81—83

Opinion filed October 20, 1982.

G. Joseph Weller and John R. Wimmer, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

The defendant, Edward Viens, was charged in a two-count indictment with the crimes of aggravated kidnaping with a deadly weapon (Ill. Rev. Stat. 1979, ch. 38, par. 10—2(a)(5)), and armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). He proceeded to a bench trial in the circuit court of Du Page County. During trial, the defendant entered and the court accepted a plea of guilty to the charge of aggravated kidnaping. Trial continued on the charge of armed violence and the defendant was convicted of this offense. He was sentenced to

serve 30 years for the kidnaping and 60 years for the armed violence conviction, these terms to run concurrently.

On the morning of February 1, 1980, Janice Klank was on her way to work when her car stalled about 30 feet from a frontage road in Lombard, Illinois. As she tried to restart the car, a brown car pulled up next to her. An individual, later identified as the defendant, got out of the brown car and offered Klank a ride. She declined, saying that her boyfriend worked down the street at National Controls and that she would go there. The defendant offered her a ride and after some hesitation, Klank accepted.

She got into defendant's car and as they were driving to National Controls, she heard the passenger door lock. Viens drove past National Controls. Klank testified that he pulled out a knife, opened it and held it about 12 inches away from her. She tried to unlock the car door but the lock came off in her hand. Klank testified that defendant told her to move over and put on the seat belt in the middle of the front seat. She did so. Defendant told Klank that he would not kill or harm her if she did as he told her.

Defendant drove onto a frontage road and stopped the car. At that time, he took out a bag of plastic restraints described by Klank as being similar to garbage bag ties. Defendant used these to tie her wrists together underneath her legs. Sometime later when Klank told him she was uncomfortable and wanted a cigarette, Viens removed the restraints.

Viens took Klank to an apartment located at 902 Ridge Square in Elk Grove Village. Viens once again restrained Klank and took her into the apartment. There, he removed the restraints and allowed her to call her mother and offered her food. Viens then told Klank that he was holding her as hostage to gain the release of his girlfriend, who was in Du Page County jail. Shortly thereafter he restrained her again, put her in the car and drove to defendant's place of employment. Defendant removed Klank's restraints and they left without entering the building. The next stop was a Clark station where defendant allowed Klank to buy cigarettes. Klank testified that defendant held a knife on her while they were at the gas station.

They returned to the defendant's apartment. Some time after their arrival, defendant told Klank to go into the bedroom and lie face down on the bed. He then used the plastic restraints to tie her hands and feet to the bedposts. Later, he expressed concern that the restraints were painful, removed them, and retied Klank in a different position. He left the bedroom returning about a half an hour later, and removed the restraints again. Klank and Viens both sat down in

the living room. It was about 1:50 p.m.

About 40 minutes later Viens and Klank got back into the car and drove to defendant's place of employment. He restrained her again and went to see if anyone was in the building. Subsequently, he took Klank into the building's bathroom where he tied her to a shower railing.

Klank asked Viens to call Charlie Bruttie, her girlfriend, to tell her the location of her disabled car. She gave Viens Bruttie's name and office number, which he wrote down. A paper with the name and number was admitted as People's Exhibit No. 4. Viens told Klank he was unable to reach Bruttie. Viens told Klank that he would leave soon to make a phone call to the Du Page County jail. He then made her go into the shower room and assume various positions so he could determine how to tie her up. He finally had her sit on a bucket, tied her wrists behind her back and tied her ankles to the bucket. He then placed a restraint around her neck and connected this to a restraint which was attached to the shower railing. He gagged the victim using two handkerchiefs. He then turned off the lights, shut the door and left. Klank testified that she heard a car start.

Viens returned after about 20 minutes, clipped the restraint which was attached to the shower railing and the ones on Klank's wrists and ankles, but left the restraint around her neck. He told her to turn around so that he could remove that restraint. When she had turned he told her to take her top off. Klank reminded him that he had said he would not hurt her. He repeated his demand and tightened the restraint around her neck. Klank complied.

Viens then told her to remove her pants and underpants. She again stated that he'd said he would not hurt her. Defendant replied that he had lied to Klank all along. Klank removed her pants and underwear. Defendant tied her hands behind her back, tied her ankles together and sat her on the floor. He then left the room. While he was gone, Klank broke one of the ankle restraints.

When he returned and noticed the broken restraint, defendant became angry. He retied Klank, this time with her wrists behind her back and secured to her ankles.

Defendant left the room, and Klank managed to break her restraints. She left the building clad only in her jacket. Defendant was in his car and when he saw Klank leave the building he drove toward her, missing her by about a foot.

Klank ran toward a railroad track. The defendant ran after her and caught her about 150 feet from the building. Viens took her back to the office, told her to get dressed, and then left the building. While

he was outside, Klank called the operator and asked for help. She hung up when defendant returned. Within minutes there was a call for Klank. Defendant allowed Klank to take the call, warning her not to give anything away. The caller identified himself to Klank as a police officer and she replied, "Oh, what's the use, I'm about to be killed or raped." At this, the defendant hung up the phone. The phone rang again, distracting defendant, and Klank was able to escape to a loading dock where several men escorted her into a building and called the police.

During trial, defendant pleaded guilty to aggravated kidnaping and moved to dismiss the armed violence count as a lesser included offense. The court stated that it would not accept the guilty plea if it was conditioned upon the dismissal of the armed violence. Defense counsel stated that it was not. The court admonished defendant and accepted the plea.

Trial continued on the armed violence count. Evidence was heard, and the State submitted the transcript of the defendant's plea of guilty to aggravated kidnaping as a judicial admission.

The defendant was found guilty of armed violence and a sentencing hearing was held. The court stated that it found no factors in mitigation. In aggravation the court noted that defendant's conduct caused or threatened serious harm, that defendant had a history of prior delinquency or criminal activity, and that the sentence was necessary to deter others from committing the same crime. The court further found that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and sentenced defendant to the maximum extended term for each offense.

Subsequently, defendant asked the court to appoint a different attorney to represent him. The court did so, and the newly appointed attorney filed a "Post-Trial Motion and Motion to Withdraw Guilty Plea." After a hearing wherein defendant testified that prior counsel had spoken to defendant only twice during the pretrial period, that he had failed to contact the attendant at the Clark station, and that he had misinformed defendant as to the effect of his guilty plea, the motion was denied. This appeal resulted.

### I. LESS SERIOUS OFFENSE

The State and defendant are in agreement that one of the convictions in this case must be vacated pursuant to the supreme court's opinion in *People v. King* (1977), 66 Ill. 2d 551, holding, *inter alia*, that multiple convictions cannot stand where more than one offense is carved from a single physical act. They also agree on the general rule

that the conviction for the more serious of the offenses is to be upheld. (*People v. King; People v. Walton* (1981), 94 Ill. App. 3d 903, 419 N.E.2d 495.) The controversy centers upon which of the two offenses is the more serious. The defendant claims that aggravated kidnaping is the more serious offense. The State disagrees.

Our supreme court recently considered this problem in *People v. Donaldson* (1982), 91 Ill. 2d 164, where the court considered multiple convictions of (1) aggravated battery causing great bodily harm; (2) aggravated battery causing permanent disfigurement; (3) aggravated battery using a deadly weapon; and (4) armed violence. The armed violence charge was predicated upon aggravated battery causing great bodily harm. The supreme court noted that that the predicate felony was a "necessarily included offense" of armed violence and holding that sentence should have been imposed only on the more serious offense, vacated the aggravated battery. We find the rule in *Donaldson* is dispositive of the instant case. Accordingly, we vacate defendant's conviction on the charge of aggravated kidnaping (Class 1 felony) and his conviction for the more serious offense of armed violence (Class X felony) is affirmed.

## II. ASSISTANCE OF COUNSEL

The defendant next raises two issues concerning the adequacy of his counsel at trial. First, he contends that his guilty plea was invalid due to the fact that counsel misinformed him as to the effect of his plea of guilty to the offense of aggravated kidnaping. He claims that he was unable to make an intelligent plea and that the court should therefore have granted his motion to withdraw that plea. Second, it is his contention that counsel's failure to contact a gas station attendant who might have served as a witness constitutes ineffective assistance of counsel and that his conviction must be vacated on this ground.

The defendant claims that, in advising him about the entry of a guilty plea, trial counsel informed him that a plea of guilty to the "lesser" charge of kidnaping would preclude trial on the "greater" charge of armed violence in that it would amount to acquittal of this greater charge. Counsel made this argument in open court. Defendant correctly notes in his brief that *People v. McCutcheon* (1977), 68 Ill. 2d 101, includes a clear rejection of the idea that a defendant can, in effect, preempt the prosecution by entry of the guilty plea. However, the record reveals that defense counsel made two other arguments urging the trial court to dismiss the armed violence charge. The first was based on counsel's contention that any further proceeding was precluded by constitutional double jeopardy. The second was based

upon the premise that any conviction of armed violence would later have to be vacated pursuant to *People v. King* (1977), 66 Ill. 2d 551.[1] Although no great weight of authority can be said to support these positions they are not insupportable. We are reluctant to denounce as *per se* improper, a defensive posture which urges that contrary authority is incorrect and should be rejected.

In order to gain reversal based upon inadequacy of counsel a defendant is required to establish actual incompetence as reflected in the manner in which the attorney executed his duties as a trial attorney, which resulted in substantial prejudice, without which the outcome of the trial would probably have been different (*People v. Carlson* (1980), 79 Ill. 2d 564; *People v. Goerger* (1972), 52 Ill. 2d 403). The trial counsel's decision to follow one strategy rather than another does not necessarily amount to incompetence. (See, for example, *People v. Tennyson* (1979), 75 Ill. App. 3d 341, 394 N.E.2d 418 (counsel's decision to emphasize an insanity defense over other possible defenses was not an indication of actual incompetence).) Generally the appellate court will not second guess the tactical decisions made by a trial counsel. (*People v. Hawk* (1981), 93 Ill. App. 3d 175, 416 N.E.2d 717.) Even an error in judgment is insufficient to meet the tests set out in the *Carlson* case. (*People v. Tolefree* (1980), 85 Ill. App. 3d 844, 407 N.E.2d 604.) The exercise of judgment and adoption or rejection of available trial tactics does not establish actual incompetence (*People v. Knowles* (1979), 76 Ill. App. 3d 1004, 395 N.E.2d 706).

The general rule, then, is that the courts will not disturb a conviction on this basis unless the totality of counsel's conduct indicates his actual incompetence. The conduct of counsel in this case does not lead to such a conclusion. He argued vigorously and obviously expended time researching the arguments which he presented to the trial court. That he did not in fact prevail is no indication of incompetence.

Defendant's contention that counsel's failure to contact and call as a witness the gas station attendant amounted to incompetence is equally without merit. In *People v. Smith* (1980), 81 Ill. App. 3d 764, 401 N.E.2d 1017, the appellate court rejected a defendant's contention that his attorney had not provided a competent defense due to his failure to research the operation of the pistol allegedly used by defendant in the commission of an armed robbery. The evidence against Viens in this case was, to say the least, substantial. Even if

---

[1]We note that trial on this matter was had before the Illinois Supreme Court decided *People v. Donaldson*.

defense counsel's failure to call the gas station attendant can be said to amount to actual incompetence, there is no indication that this testimony would have been likely to produce a different result in this case.

### III. RULE 402 ADMONITIONS

Defendant also contends that the trial court's admonitions were inadequate, thus resulting in an unintelligent plea of guilty. At the time when the defendant entered his guilty plea to the charge of aggravated kidnaping, the trial court gave a lengthy admonition which fully complied with the provisions of Rule 402. No assertion is made that the trial judge failed to meet the requirements of this rule. Rule 402 provides in relevant part:

> "In hearings on pleas of guilty, there must be substantial compliance with the following: (a) Admonitions to Defendant. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following: (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and (4) that if he pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him." 81 Ill. 2d R. 402.

The defendant argues that although these admonitions are generally sufficient to assure the intelligent entry of a guilty plea as required by the United States Constitution (see *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709), more was required in this case. The defendant contends that where an individual enters into a guilty plea clearly expecting that by doing so he has precluded conviction on a further count, the trial judge must go beyond the provisions of Rule 402. The defendant claims that the trial court had a duty to inform him (1) that his guilty plea did not preclude a further prosecution on the charge of armed violence, (2) that his action did not limit the sentence to that for a Class 1 felony, (3) that a guilty plea to the aggravated kidnaping constituted, in effect, a judicial admission to the elements of the armed violence charge, and, (4) that such an admission could be used against him in the armed violence prosecution. Defendant cites no case law, nor did our research

reveal any, to support this rather expansive interpretation of the constitutional requirement that guilty pleas be intelligently made.

We begin by noting that the trial judge, in open court and in the presence of defendant, stated that he would not accept the plea of guilty to aggravated kidnaping if it was made on condition that the other charge be dismissed. Defense counsel answered that the plea was not so conditioned and the judge continued with his admonitions. In light of this exchange it strains credulity to argue that Viens had no idea he could be tried and convicted for armed violence.

Implicit in defendant's argument on this point is the assumption that the fact that the plea resulted in no tactical advantage establishes that it could not have been intelligently made. The law requires a knowing and informed plea; not a shrewd one. It appears from the record that this plea was knowingly and intelligently made. The Rule 402 admonitions were sufficient to meet the constitutional standard.

The Historical and Practice Notes to Rule 402 indicate that it was intended to meet the standards set forth in *Boykin*. (Ill. Ann. Stat., ch. 110A, par. 402, Historical & Practice Notes, at 531-32 (Smith-Hurd 1976).) The case law interpreting the rule has not seemed to indicate that the courts are bound by so broad a duty as defendant posits. In *People v. Jenkins* (1970), 128 Ill. App. 2d 351, 262 N.E.2d 105, the court held that no reversal was required due to a trial court's failure to inform a defendant that his guilty plea could result in the suspension of his driver's license.

> "The provision of the statute requiring the court to advise a defendant of the consequences of his plea means those consequences which constitute punishment to be imposed by the court. People v. Thomas, 41 Ill. 2d 122, 242 N.E.2d 177 (1968). It is not necessary that a court advise a defendant of the innumerable side effects which are not part of a sentence to be judicially imposed." 128 Ill. App. 2d 351, 355, 262 N.E.2d 105, 107.

■ Further, nothing in the Committee Comments or Historical and Practice Notes indicates that the legislature intended the statute to relate to any charge other than the one to which the defendant is pleading guilty. (Ill. Ann. Stat., ch. 110A, par. 402, Committee Comments, at 529 (Smith-Hurd 1976).) The admonition given in this case comported with Rule 402 and the mandate of *Boykin*. The trial court properly denied defendant's motion to withdraw his plea.

### IV. DOUBLE ENHANCEMENT

Defendant asserts that his conviction for armed violence cannot stand, claiming that it amounts to an improper double enhancement

because a weapon used to establish that offense was also used to prove the predicate felony. He proposes two rationales in support of his position. We find neither one to be persuasive.

First, the defendant relies on *People v. Haron* (1981), 85 Ill. 2d 261. In *Haron*, the supreme court found that the General Assembly, in enacting the armed violence statute, did not intend that the presence of a weapon be used to enhance an offense from a misdemeanor to a felony which could then be used as a predicate for the charge of armed violence. "In our opinion the requirement of section 33A–2 that there be the commission of a felony while armed with a dangerous weapon contemplates the commission of a predicate offense which is a felony without enhancement by the presence of a weapon." *People v. Haron* (1981), 85 Ill. 2d 261, 278.

This case falls outside the rule propounded in *Haron*. The presence of a weapon did not serve to elevate the offense from a misdemeanor to a felony; at most it served to establish a more serious predicate felony (aggravated kidnaping), than would otherwise have been proved (kidnaping).

The other rationale urged by defendant is that contained in the United States Supreme Court decision in *Busic v. United States* (1980), 446 U.S. 398, 64 L. Ed. 2d 381, 100 S. Ct. 1747. There, defendant was found guilty of assaulting a Federal officer with a dangerous weapon, and of violation of a statute concerning the use or carrying of a firearm during the commission of a felony. 18 U.S.C. sec. 111 (1976); 18 U.S.C. sec. 924(c) (1976), respectively.

The United States Supreme Court held that the conviction on section 924(c) constituted an impermissible double enhancement of penalty. The court based its ruling on the fact that section 111 provided for enhancement of sentence where a dangerous weapon was used, and that legislative history indicated that section 924(c) was not intended to apply.

The *Busic* case is distinguishable from those before us. First, the statute construed there and our armed violence statute are facially different. Section 924(c) provides in relevant part:

"Whoever—(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, *in addition* to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years." (Emphasis added.) (18 U.S.C. sec. 924(c).)

The armed violence statute provides in relevant part:

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2)

and:

"(a) Violation of Section 33A—2 with a Category I weapon is a Class X felony. (b) Violation of Section 33A—2 with a Category II weapon is a Class 2 felony or the felony classification provided for the same act while unarmed, whichever permits the greater penalty." Ill. Rev. Stat. 1979, ch. 38, par. 33A—3.

Facially, section 924 is a sentencing provision, while the Illinois armed violence statute creates a distinct felony. The armed violence statute does not, strictly speaking, provide an enhancement, but rather a further crime. Going beyond this facial distinction, the structure of the Illinois armed violence statute avoids the double enhancement problem which is clearly present in 18 U.S.C. sec. 924(c) (1976). Section 924(c) results in an "accumulation" of penalty which does not occur where a defendant has been found guilty of armed violence.

For example, the defendant in *Busic* was charged with assaulting a Federal officer. The fact that he committed that assault with a deadly weapon resulted in an increased sentence for the assault. Section 924(c) imposed a further penalty for the same condition (use of a deadly weapon). The effect was incremental. The assault statute in question provided for a maximum three-year sentence, or alternatively, where a deadly or dangerous weapon was used, a maximum 10-year sentence. Section 924(c) worked to provide an *additional* sentence of 10 years.

■ Such is not the case with the armed violence statute. The severity of the penalty for the underlying felony does not affect the penalty imposed for the armed violence charge. For instance, where the underlying felony charge is kidnaping, the use of a Category I weapon serves to allow a conviction for a Class X felony—armed violence. If the underlying felony is aggravated kidnaping with a deadly weapon, proof of the use of a Category I weapon allows for the conviction of a Class X felony, armed violence. The character of the underlying felony is irrelevant. Further, any possible injustice is avoided by our application of *People v. Donaldson* (1982), 91 Ill. 2d 164, to vacate the aggravated kidnaping charge.

### V. SENTENCING

Finally, the defendant maintains that both of the sentences imposed are excessive in that his behavior was not sufficiently brutal or

heinous to justify the imposition of an extended term. Section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)), provides for the imposition of an extended sentence where an offense is accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty." The defendant contends that no such behavior was present in the case at bar. He notes that no serious physical injury was sustained by the victim, that the defendant showed concern for her physical comfort and that he offered her food and drink and stopped at a gas station to get her cigarettes.

Generally, a reviewing court has the authority to reduce a sentence only if a trial court has abused its discretion in imposing it. (*People v. Cox* (1980), 82 Ill. 2d 268.) A sentence which reflects both the gravity of the offense and the rehabilitative potential of the defendant will not be set aside. *People v. Heflin* (1978), 71 Ill. 2d 525, cert. denied (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.

In this case, the sentence imposed was proper and reasonable. The facts on the record are similar to those presented in *People v. Piontkowski* (1979), 77 Ill. App. 3d 994, 397 N.E.2d 36. In that case, a defendant robbed a liquor store. Even though all the employees of the liquor store were cooperating, he herded them into a large walk-in beer cooler at the back of the store where he ordered the three male employees to lie face down on the floor, and instructed one female employee to bind the hands of her co-workers. Two of the employees testified at trial that the defendant had made reference to taking the female employee with him when he left. The defendant left alone through a rear door, however, leaving the employees tied up. The trial court imposed an extended sentence pursuant to section 5—5—3.2. The reviewing court rejected defendant's contention that the fact that there had been no serious physical injury as a result of his action made the extended sentence excessive. The appellate court held that where an offense has been exacerbated by needless additional intrusions upon the physical integrity of the victim, an extended sentence is proper.

The record in the instant case reveals a series of actions by defendant which can reasonably be said to have terrorized and endangered the victim. In addition, testimony taken at the sentencing hearing indicated that the victim suffered substantial emotional trauma as well as some minor physical injuries. The courts may consider mental suffering in deciding whether to impose an extended sentence. Common experience teaches that the subjective pain of mental injury often exceeds that of physical injury and the intangible scars may

be as lasting. (*People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255.) The sentence imposed here was not improper, and accordingly we affirm on this point.

In conclusion, the conviction and sentence for the offense of aggravated kidnaping is vacated as dictated by our supreme court's decision in *People v. Donaldson* (1982), 91 Ill. 2d 164. The judgment of the circuit court of Du Page County is, in all other respects, affirmed.

Affirmed in part, reversed and vacated in part.

SEIDENFELD, P.J., and HOPF, J., concur.