THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RUDY RANGEL, Defendant-Appellant.

First District (4th Division)   No. 86—2134

Opinion filed November 25, 1987.

Barry David Sheppard, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Laura M. Lambur, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant was found guilty of unlawful use of weapons by a felon (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1) and sentenced to five years in the penitentiary. In this appeal from that judgment, defendant contends that he was denied his right to the effective assistance of counsel at trial and that the State failed to prove him guilty of the offenses beyond a reasonable doubt.

We affirm the judgment of the trial court.

BACKGROUND

The incident giving rise to the charge against defendant occurred on December 8, 1985, in the Bridgeport area of Chicago. Sergeant John Gallagher testified that about 9 a.m. that day he was on routine patrol in a marked police car when he monitored a call of a man with a gun at 945 West 32nd Street. When he arrived on the scene, he observed defendant coming out of the building located at that address wearing a small, light-brown hat and a maroon three–quarter-length coat, carrying a plastic bag filled with clothes. Gallagher asked defendant if he knew who had called the police, but defendant responded that he did not and drove off in a white car.

As defendant was leaving the scene, a woman, whom he identified as the elder of the Reno sisters (Lynn Reno), approached him and told him that she was looking for her younger sister (Chris Reno), who had gone to call the police after her boyfriend (defendant) had threatened to kill her. Chris arrived on the scene at that point, and told him that she and defendant had argued, and that he had threatened to kill her with one of his guns. Gallagher continued his conversation with the women, who were speaking in an excited manner, and through it obtained a description of defendant and his car which he transmitted via police radio. This transmission also included defendant's potential destination and advised that he might be armed. Gallagher then ran a registration check of Illinois license plate number RGX 61, which was

supplied by the women, and verified that it was registered to defendant.

In his further conversation with the women, Gallagher learned that the sisters lived in an apartment in the building, that defendant was staying there with one of them, and that Chris was afraid to point him out as he left the building while she was talking with the officers. Gallagher was also informed that defendant had several guns in the apartment and asked if he wanted them; and, in response, he and several of the other officers who had arrived on the scene went up to the apartment to get them. They recovered a gun holster and some ammunition in the search that followed, and these items were inventoried at the station as "voluntary turn-ins."

Anthony Wilczak testified that he also responded to the call at the 32nd Street address, and when he arrived about 9 a.m., observed Sergeant Gallagher there talking with two women. He did not see defendant at that time, but was present in the apartment when the weapons were recovered. Gallagher then dismissed him with instructions to look for a male Latin, about 29 years of age, who was wearing a maroon jacket, beige hat and blue jeans, and driving a white 1977 Malibu car which had red pinstripes.

After touring the area for about an hour, Wilczak observed a car which matched that description pulling up in front of the building on 32nd Street. When defendant stepped out of it, Gallagher observed that he matched the description of the man sought in connection with the aggravated assault. At that point, defendant looked in the direction of the police car as it approached, made a motion with his hand at the open door of his car, closed the door and began to walk into the hallway of the building. Wilczak called out to him to stop, but defendant kept walking and stepped up his pace.

When the squadrol pulled up to within 10 feet of the hallway door, Wilczak called out to defendant a second time, then jumped out of the police vehicle with his gun drawn and ran after him. Defendant stepped into the hallway and Wilczak forced the door open, then stopped defendant in the hallway, where he conducted a patdown search of his person. Wilczak advised defendant that he was under arrest for aggravated assault, and took him into custody; then he walked over and looked inside defendant's car, where he observed a gun lying on the floor on the driver's side. Wilczak used defendant's keys to open the door of the car and retrieved a loaded .22 caliber pistol. He further observed that the car was otherwise empty, and that it bore the license plates previously described. Defendant was transported to the station, where he was advised of his *Miranda*

rights once again, but offered nothing more than a bare statement about having a fight with his girlfriend.

The State requested that a certified copy of defendant's prior felony conviction and the weapon and ammunition recovered from defendant's car be admitted into evidence. Defense counsel raised no objections, and they were admitted by the court.

The defense opened its case with the testimony of 17-year-old Chris Reno, who testified that on the date in question she lived in an apartment at 945 West 32nd Street and was defendant's girlfriend. She stated that when defendant came to her apartment about 5:30 that morning he was drunk and violent, that an argument ensued between them and that he began wrecking her apartment. After about two hours of this disruption, she left the apartment and went upstairs to a neighbor's apartment, leaving her sister Lynn alone with defendant. When she returned, defendant told her to leave, and threw her down. She then ran into the bedroom and retrieved the .22 caliber pistol which she said she had purchased from someone on the street about six months ago. After that, she left the apartment, placed the gun under the driver's seat of defendant's car, closed the door and walked away.

She further testified that Sergeant Gallagher pulled up about this time, and as she began to tell him about a man with a gun who was going to hurt her and her sister, defendant walked out of the building carrying her laundry bag. She ignored him, however, and told the officer that the offender was tall and that he drove a blue car. She further testified that she observed defendant put the bag containing her things into the trunk of his car and leave the area, then telephoned the police. She stated that no one had called the police prior to that, and later told Gallagher that she did not say anything to him about defendant when he came out of the building because she was afraid.

Ms. Reno further testified that the police responded to the scene within 10 minutes of her call, and at that point she spoke with Gallagher a second time. She showed the officers the damage defendant had done to her apartment, and in the search that followed, the officers recovered a revolver from under a cushion on the couch. Ms. Reno claimed that this weapon also belonged to her and that she had purchased it on the street from a different person. At the time of the search, however, she told the officers that the weapon and ammunition found in the apartment belonged to defendant, and filed a complaint against defendant at the police station. She also admitted signing the complaint, but stated that she did so without reading it beforehand, and that one of the officers told her that it did not mat-

ter if she signed it because they had defendant anyway.

Ms. Reno testified that she did not recall seeing defendant in possession of a weapon that day but told a different story to police because she was frightened and wanted defendant out of her life. She finally stated that she is no longer involved with defendant, that she had originally been subpoenaed in this case by the prosecution and that after she spoke with them, she was tendered to the defense and voluntarily appeared at the trial.

On cross-examination, Ms. Reno positively identified a box of Winchester shells for a .357 Magnum pistol and a box of .25 caliber pistol cartridges which were recovered from her apartment, then acknowledged that she did not own any weapons that require that type of ammunition and reluctantly stated that she was keeping these items for a person known to her as Jim Decho. She also acknowledged that when defendant threw her out of the house, neither she nor her sister threatened defendant with a gun or told him to get out, and that her sister was unaware of the guns. After speaking with the officers who responded to her call, she invited them to the apartment to see the damage inflicted by defendant, and they conducted the search which uncovered the guns and ammunition.

Defendant testified that he was 30 years of age and on the date in question was living at 2443 South Christiana Avenue. He also sated that Chris Reno was his girlfriend then, and that he had gone to her apartment and argued with her that morning after he had been drinking. Although he denied that he had a weapon with him at the time, or that he had threatened Ms. Reno, he acknowledged that he had taken some of her clothing and jewelry and put them in his car while she talked with a police officer. When he returned to the apartment building later in the morning, he was placed under arrest by police officers who took his car keys and told him that a weapon had been recovered from his automobile. To his knowledge, there was no weapon in the car at that time.

On cross-examination, the prosecutor elicited from defendant that he was aware of the fact that Ms. Reno had guns in her apartment, but he stated that he did not exactly know where they were kept, and that he had told her to get rid of them. He also stated that when the argument between them became violent, he threw Chris down and she left the apartment; when she returned, he told her to leave and started to pack her things. He also left the premises at that time but returned later to apologize and claimed that he was unaware of the police presence at that time until the squadrol came down the street.

In rebuttal, the State introduced a certified copy of defendant's

1979 burglary conviction and five-year penitentiary sentence. The State also recalled Sergeant Gallagher, who testified that he arrived on the scene about 9 a.m. and talked to the complainant only once, and that when he left the area about 9:30 a.m. he did not return. He further testified that Ms. Reno never told him that the offender was 6 feet tall and drove a blue car, but that she did volunteer the information on the guns and told him that she wanted them out of the apartment.

At the close of evidence and argument, the court found defendant guilty as charged. In doing so, the court commented that Chris Reno's testimony was unbelievable, and that the court considered that she had committed perjury. Defendant was subsequently sentenced to five years in the penitentiary and now appeals from this judgment.

OPINION

■ Defendant first contends that he was denied his right to the effective assistance of counsel at trial. In support of that contention he specifically cites counsel's failure to file a motion to suppress the gun which was recovered from his locked car, and maintains that this omission alone shows that counsel's performance was substandard. In addition, defendant cites the failure of his counsel to object or move to strike the "irrelevant" portions of the testimony of the State's witnesses which he maintains served only to prejudice the trier of fact and improperly influenced the ultimate determination in this case. The State responds that defendant's contention is without merit and that defendant has failed to demonstrate how these alleged "errors" adversely affected the outcome of his trial.

Both parties agree that defendant's claim must be judged by the standards set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, which were adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. In *Strickland,* the Supreme Court espoused reasonably effective assistance as the standard for an attorney's performance and advised that a reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, *i.e.*, defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.

■ In order to prevail on a claim of ineffective assistance of counsel, defendant must show that his counsel's performance was deficient, and that but for the deficient performance, the result of the

proceedings would have been different. The performance inquiry is directed to the reasonableness of counsel's assistance in light of all the circumstances. In this regard we note that the Court in *Strickland* advised that if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice accruing to defendant, that course should be taken. (*People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) For the reasons which follow, we conclude in the instant case that the alleged errors do not constitute the prejudice necessary to establish defendant's claim. See *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246; *People v. Rush-Bey* (1987), 152 Ill. App. 3d 17, 503 N.E.2d 1193.

It is axiomatic that an accused is entitled to competent, not perfect or successful, representation (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677), and that substantial prejudice is not established by mere conjecture or by second-guessing counsel's trial tactics. In addition, competence is to be determined from the totality of counsel's conduct at trial. (*People v. Hilliard* (1982), 109 Ill. App. 3d 797, 441 N.E.2d 135.) Our review of the instant case shows that counsel more than met the *Strickland* standard.

Although counsel did not file a motion to suppress the weapon discovered in defendant's car, this, in itself, does not establish ineffective assistance of counsel. (*People v. Taylor* (1982), 110 Ill. App. 3d 112, 441 N.E.2d 1231; *People v. Cheung* (1980), 83 Ill. App. 3d 1048, 404 N.E.2d 558.) Where, as here, the facts presented at trial show the unlikelihood of succeeding in such a motion since the officers reported a plain view observation of a weapon in defendant's car (see *People v. Kubat* (1986), 114 Ill. 2d 424, 501 N.E.2d 111) after his arrest (see *People v. Zielinski* (1980), 91 Ill. App. 3d 519, 414 N.E.2d 1113), counsel's decision to proceed to trial without such a motion does not demonstrate the prejudice required to establish ineffective assistance. See *People v. Viens* (1982), 109 Ill. App. 3d 1017, 441 N.E.2d 660.

The same result obtains with regard to defendant's general contention that counsel failed to object to the hearsay and irrelevant testimony presented by the State's witnesses. Defendant has not pinpointed the errors which he claims warrant reversal, and on review of the text, does not disclose any errors of the magnitude necessary to support his general claim (see *People v. Phillips* (1982), 110 Ill. App. 3d 1092, 443 N.E.2d 655), nor does it indicate that the trial court considered improper evidence in making its ultimate determination. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649.) To the contrary, the record shows that counsel vigorously cross-examined the State's

witnesses, presented a defense and made a clear and cogent closing argument in defendant's behalf in the face of strong evidence against his client. (See *People v. Hilliard* (1982), 109 Ill. App. 3d 797, 441 N.E.2d 135.) Under these circumstances, we conclude that defendant has failed to meet his burden and that his claim of ineffective assistance of counsel is without merit.

Defendant next contends, in two arguments, that the State failed to prove him guilty of the offense beyond a reasonable doubt. Defendant first asserts that since there is no evidence that a weapon was recovered "on or about his person" at the time of his arrest, the State failed to prove an essential element of the offense of unlawful use of weapons.

Initially, we observe that in 1984 the General Assembly amended the Criminal Code by creating a separate offense for the unlawful use of weapons by a felon. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1.) This statute provides in pertinent part as follows:

> "(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24—1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction ***.
>
> (b) Violation of this Section by a person not confined in a penal institution shall be a Class 3 felony."

Prior to this enactment, provision was made for the imposition of an enhanced penalty under the unlawful use of weapons statute for those persons who had already been convicted of a felony under the laws of this or any other jurisdiction within five years of release from the penitentiary or conviction. (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(b); see *People v. McCrimmon* (1986), 150 Ill. App. 3d 112, 501 N.E.2d 344.) In addition, specific violations for carrying or possessing weapons in a vehicle are set forth in several paragraphs of section 24—1. (Ill. Rev. Stat. 1983, ch. 38, pars. 24—1(a)(3), (a)(4), (a)(9).) In view of these factors, defendant suggests that section 24—1.1 does not include possession of a designated weapon by a felon in a vehicle and, therefore, that the State did not establish his guilt of the offense as charged. We find this interpretation untenable.

The function of a court in construing a statute is to ascertain and give effect to the intent of the legislature. In performing this task, it is proper for the court to consider the language used in the statute, as well as the reason and necessity for the law, the evils to be remedied by it, and the objective and the purposes to be obtained. In addi-

tion, a reviewing court may presume that the General Assembly did not intend absurdity, irrelevance or injustice. *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.

The purpose of the legislature in enacting a specific provision for possession of a weapon by a felon is to protect the health and safety of the public by deterring possession of weapons by a class of persons who the legislature has deemed pose a higher risk of danger to the public when in possession of a weapon. (*People v. Crawford* (1986), 145 Ill. App. 3d 318, 495 N.E.2d 1025.) In view of this purpose, we find the construction used by defendant to be illogical and inconsistent (see *People v. Raseaitis* (1984), 126 Ill. App. 3d 600, 467 N.E.2d 1098), and that its adoption would seriously undermine the protections afforded and intended by the statute. Accordingly, we conclude that the recovery of the gun from defendant's car rather than from his person does not, in itself, exclude him from the provisions of the statute under which he was charged. The decisive question then is whether the evidence supports defendant's knowing possession of the weapon to the requisite standard.

In order to sustain a conviction for this offense under section 24—1.1, the State was required to prove defendant's knowing possession of a prohibited firearm and his prior felony conviction. (*People v. Gober* (1986), 146 Ill. App. 3d 499, 496 N.E.2d 1226.) We observe that no question has been raised regarding the second element, and that the argument of the parties is focused on whether the State established defendant's knowing possession of the weapon.

Criminal possession may be actual or constructive (*People v. Nunez* (1974), 24 Ill. App. 3d 163, 320 N.E.2d 462); and where, as here, the latter obtains, the State is required to establish defendant's knowledge of the presence of the prohibited weapon and his immediate and exclusive control over the area where it was found. (*People v. Williams* (1981), 98 Ill. App. 3d 844, 424 N.E.2d 1234.) The element of knowledge may, and most often must, be proved by circumstantial evidence (*People v. McKnight* (1968), 39 Ill. 2d 577, 237 N.E.2d 488); and although mere presence in the vicinity of the contraband is insufficient to establish constructive possession, control over its location gives rise to such an inference which is not undermined by the presence of others in the vicinity. See *People v. Janis* (1977), 56 Ill. App. 3d 160, 371 N.E.2d 1063 (and cases cited therein).

Applying these principles to the case at bar, we find that the totality of the facts reflected in the record lead to a reasonable inference that defendant was in knowing possession of the weapon and was properly found guilty of the offense as charged. The undisputed

evidence shows that the car from which the weapon was removed was owned by defendant and that he was in possession of it for at least one and a half hours before the weapon was retrieved by police. According to the State's witnesses, the weapon was in plain view on the floor of the car where defendant had been sitting just before he exited and was apprehended by police. The record also shows that at that point in time, the officers were acting on a complaint of aggravated assault by Chris Reno against defendant, who reportedly was armed.

■■■ Defendant's ownership of the car, his presence therein, and partial visibility of the weapon from the outside are factors which have been held sufficient to establish defendant's knowledge (*People v. Rogers* (1974), 18 Ill. App. 3d 940, 310 N.E.2d 854); we find them equally viable here. In addition, although the presumption of knowing possession arising from these facts may be rebutted (*People v. Seibech* (1986), 141 Ill. App. 3d 45, 489 N.E.2d 1138), we observe that the trial court in the instant case found Ms. Reno's testimony to be totally incredible, and by its decision indicated that it was not persuaded by defendant's explanation, either. On this record we find no reason to invade the province of the trier of fact on the question of the credibility of the witnesses or to upset its ultimate determination. (*People v. Givens* (1977), 46 Ill. App. 3d 1035, 361 N.E.2d 671.) In our judgment, the court could reasonably conclude from the evidence presented that defendant, a convicted felon, knowingly possessed a prohibited weapon and was proved guilty of the offense beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.