THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY ELAM, Defendant-Appellant.

First District (5th Division)   No. 1—87—3251

Opinion filed April 20, 1990.

Randolph N. Stone, Public Defender, of Chicago (Callie Baird and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

On December 2, 1986, Chicago police officers executed a search warrant for the premises at 1223 West Washbourne in Chicago. As a result of this search, certain contraband was recovered and defendant was arrested and charged with possession of a controlled substance with the intent to deliver and unlawful use of a weapon by a felon. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401; ch. 38, par. 24—1.1.) After a jury trial in the circuit court of Cook County, defendant was acquitted of the charge for possession of a controlled substance, but was found guilty on the weapons charge and sentenced to a term of four years' imprisonment in the Illinois Department of Corrections. Defendant now brings this appeal, and the sole issue is whether he was proved guilty of the offense for which he was convicted beyond a reasonable doubt.

It was uncontested at trial that defendant had a prior felony conviction. The basis of defendant's claim is that the State failed to present the jury with sufficient evidence that he constructively possessed the weapons which were found during the search of the premises where defendant was arrested.

The pertinent facts are as follows.

On November 30, 1986, after a conversation with a confidential informant, Chicago police officer John Hennis commenced an investigation for possible drug trafficking at 1223 West Washbourne in Chi-

cago. At about 11 a.m. on December 1, 1986, Officer Hennis and his partner set up a surveillance of the premises and during the next hour observed several persons approach the residence, which was a single-family, two-story row house maintained by the Chicago Housing Authority. In each instance the person did not enter the residence, but rather appeared to engage in a "hand transaction" at the door of the residence. The officers were unable to identify the person inside the residence who was entering into these transactions. However, based upon these observations, in conjunction with information from the confidential informant, Hennis obtained a search warrant, which he executed about 10:55 a.m. on December 2, 1986, with the assistance of seven other Chicago police officers.

According to Officer Hennis' testimony, he knocked at the door of the residence, announced his office and stated that he had a search warrant. When no one responded, he forcibly entered the residence using a sledge hammer. Defendant was found standing on the staircase leading to the second floor. He was alone in the residence and dressed only in underpants and a T-shirt. Hennis asked whether he was "Tony," and defendant answered in the affirmative. Defendant was then shown the search warrant, handcuffed and searched.

Based upon information in his possession, Hennis immediately checked the refrigerator in the kitchen, where he found a fake beer can. Inside the beer can Hennis found 13 packets of a tan powder, which later proved to be a substance containing heroin. Defendant was shown the beer can and the packets, advised of his rights under *Miranda* and then asked whether any other contraband, large amounts of cash or weapons were inside the residence. Defendant then reportedly told police that there were two guns inside a shoebox in the bedroom upstairs. Officer Hennis relayed this information to Officer Fitzmaurice, who was conducting a search of the second floor. Then Fitzmaurice, in the presence of Hennis, discovered two loaded handguns in 1 of 15 or more shoeboxes that were stacked inside the upstairs bedroom. Hennis continued to search the bedroom and found a third gun, a .22 caliber "Saturday Night Special," between the mattresses of the bed. When defendant was asked about this gun, he reportedly stated that he had been unaware of this gun, which belonged to his girl friend, who lived at the residence.

Officer Hennis also testified that in the same room where the guns were found, there were men's clothing and shoes, and two letters which were addressed to defendant at the West Washbourne address. Furthermore, when defendant was arrested he donned clothing he obtained from this bedroom and, upon questioning, he stated that

he had been living at the residence for the past three months. Although much of this information was not included within the police report, Officer Fitzmaurice testified in corroboration of Hennis' testimony.

At trial defendant denied that he had resided at the Washbourne address. He testified that the residence was occupied by Diane Winham, the mother of his six-year-old daughter, and her four children. Defendant stated that he did not own a key to the premises and that he arrived there at 8:30 a.m. that morning, at Winham's request, to take his daughter to school. He claimed that he only stayed at the residence so that he could pick his daughter up from school later that morning and he merely removed his pants when he laid down on the couch to watch television. Defendant produced several documents which indicated that his residence was, in fact, 856 North Mayfield, where he lived with his grandmother and his cousin. Defendant acknowledged that he received two letters addressed to him at the Washbourne address. However, he explained that these letters were sent by a friend who only knew him through his relationship with Winham.

With respect to the search, defendant claimed that the officers never knocked prior to forcibly entering the residence. He further claimed that he was immediately asked "where's the cocaine?" and that he was slapped by an officer when he did not respond. He denied that he ever told the police the whereabouts of any guns or discussed the ownership of any weapons that were recovered by police.

On cross-examination defendant admitted that he visited his daughter at the Washbourne residence as often as three times each week. He also admitted that he would, in fact, sleep overnight at the residence as often as three nights per week, as well. However, he denied that he kept any clothing or belongings at the residence.

Based on the above evidence, the jury found defendant guilty of unlawful use of a weapon by a felon. Defendant now challenges this finding.

Section 24—1.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1) states:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his abode or fixed place of business any weapon prohibited under Section 24—1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction ***."

In order to sustain a conviction for this offense under this

section, the State was required to prove defendant's knowing possession of a prohibited firearm and his prior felony conviction. (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936.) Here, as in *Rangel*, the only issue is whether the State established defendant's knowing possession of the weapon. The State argues that although it did not prove actual possession, sufficient evidence was presented to show that defendant constructively possessed the prohibited weapons. We agree.

■ To prove constructive possession of contraband, one must show that: (1) defendant had knowledge of the presence of the prohibited weapon, and (2) that he exercised immediate and exclusive control over the area where the weapons were found. (*Rangel*, 163 Ill. App. 3d at 739.) In this case Officer Hennis, who obtained and executed the search warrant, testified that defendant supplied him with information regarding the whereabouts of two weapons for which he claimed ownership. Further, Hennis corroborated defendant's statement by testifying that the prohibited weapons were discovered in the exact location that defendant had earlier provided. In addition, both Hennis and Fitzmaurice presented evidence that contradicted defendant's testimony that he did not reside at the Washbourne address. The totality of the evidence, if believed by the jury, whose duty it was to assess credibility, weigh the evidence and resolve conflicts (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733), was sufficient to support defendant's conviction.

We are not unmindful of the case of *People v. Pugh* (1967), 36 Ill. 2d 435, 223 N.E.2d 115, which defendant cites in his appeal. While we acknowledge that the facts of that case are similar to those in the case at bar, we find *Pugh* to be distinguishable. In *Pugh* the Illinois Supreme Court reversed a conviction for unlawful possession of a narcotic drug based upon a determination that there was insufficient evidence that the premises where the narcotics were found was under the control of the defendant. However, in that case the police entered the residence pursuant to a search warrant that charged that narcotics were being sold from the premises by "Patricia Plunkett." Defendant Pugh, who was found inside the residence when the warrant was executed, claimed that he did not reside at the address and had entered the residence only six hours earlier. Although the police officers testified that defendant had indicated to them that he had been living at the apartment for the past two months, no corroborative evidence of this fact was presented at trial. In light of this evidence, the court stated:

"It would seem the People could have produced some evi-

dence that the defendant paid the rent or that he was in the apartment frequently if such were the case." (36 Ill. 2d at 437-38.)

In the present case, defendant, by his own admission frequented the apartment, sometimes sleeping there as well. Furthermore, the State presented evidence that defendant received two letters addressed to him at the Washbourne address. The jury could have concluded from this evidence that defendant was residing at the Washbourne address and so we find the holding in *Pugh* not to be controlling.

We note, too, that our review is limited to a determination of whether, when viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found defendant guilty. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) Since we cannot say that the evidence was so unsatisfactory that we are left with a reasonable doubt of defendant's guilt (*People v. Collins* (1985), 105 Ill. 2d 237, 478 N.E.2d 267), we affirm the judgment of the circuit court.

Affirmed.

LORENZ and GORDON, JJ., concur.