THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL L. HAMMER, Defendant-Appellant.

Second District   No. 2—91—0500

Opinion filed May 13, 1992.—Rehearing denied May 29, 1992.

R. Daniel Lyons, of Hyatt Legal Services, of Lombard, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and David A. Fernandes, of Urbana (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Michael L. Hammer, appeals his conviction in the circuit court of Du Page County of unlawful possession of weapons by a felon (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(a)). On appeal, defendant contends that the court erred in admitting into evidence certain testimony by defendant's son and that application of the theory of constructive possession to the facts of this case violated his due process rights.

On September 5, 1990, Du Page County sheriff's deputy Paul Burgermeister arrived at the home of defendant and his wife, Rosemarie Hammer, in response to a report of a domestic disturbance. Rosemarie told the officers that she and defendant had been arguing and that defendant had threatened to get a gun and shoot her. Burgermeister asked her whether there were guns in the house, and she replied that there were. Her son, Scott Hammer, then led the officer into the marital bedroom and showed him the guns.

Burgermeister recovered five guns from the bedroom closet. Scott said there were two additional guns which he could not locate. Burgermeister then asked defendant to show him where the other guns were. According to Burgermeister, defendant entered the bedroom, identified the guns on the bed as his and stated that there were other guns. Defendant then recovered a .32 caliber handgun which was in the closet wrapped in a towel. He stated that he had given the remaining missing gun to his brother-in-law some time ago.

Defendant was arrested and charged with domestic battery. As he had a previous felony conviction, he was also charged with unlawful possession of weapons by a felon.

At trial, Rosemarie Hammer testified that the guns in the house were defendant's. He had purchased them prior to their marriage and used them for hunting. She had never fired any of the guns and in fact did not even know how to use a gun.

She further testified that she had a firearm owners' identification (FOID) card. She applied for the card at her husband's suggestion. He told her that if they were going to keep guns in the house, one of them should have a FOID card. As he had previously been turned down for a card, he suggested that she apply as well.

Defendant and Rosemarie both submitted applications for FOID cards. Defendant's application was again rejected, presumably because of the prior felony conviction, but Rosemarie received a card, which was still valid on September 5, 1990.

Scott Hammer also testified. He stated that he told the police officer where the guns were kept. One of the guns was one that defendant had given him one or two years before. A year and a half to two years before, Scott and defendant had discussed going hunting with one or more of the guns found in the closet. Scott had seen defendant take the guns from the closet, telling Scott he was going hunting with Scott's grandfather.

Officer Burgermeister was the third and final State's witness. He testified to being called to defendant's home regarding a marital dispute. After Scott showed him where the guns were located, he removed them from the closet, took them out of their leather cases, checked to ensure that they were unloaded and laid them on the bed. He asked defendant if he would show him where the additional guns were. Defendant identified the guns already on the bed as "his guns" and then located the .32 caliber handgun wrapped in a towel. He stated that he had given one additional gun to his brother-in-law.

The court found defendant not guilty of domestic battery, but convicted him of the weapons charge. It sentenced defendant to two years' probation, with the first 28 days to be served in the county jail. The court denied defendant's post-trial motion, and he filed a timely notice of appeal.

Defendant's primary contention on appeal is that his conviction based on a theory of constructive possession of the guns violates his right to due process of law (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. 1, §2). Defendant's argument is somewhat difficult to follow and requires some explication. He contends that, since the guns were located in the marital bedroom, it must be presumed that they were jointly possessed by defendant and Rosemarie. Since Rosemarie possessed a FOID card, it was not unlawful for her to own the guns. None of the guns were of a type which is inherently illegal (such as a sawed-off shotgun). Under these circumstances, defendant says he is guilty of no more than sleeping in the same bedroom where his wife kept the guns and, thus, application of the unlawful possession statute to him is unconstitutional.

Defendant likens his situation to a defendant convicted through police entrapment. Defendant explains that his wife was issued a FOID card by the Department of State Police. Both he and his wife submitted simultaneous applications. Thus, according to defendant, the State is chargeable with knowledge that guns were to be kept in the marital home, where defendant also lives. With this knowledge, the State issued Rosemarie a FOID card and now allegedly

seeks to hold defendant responsible for what it knowingly permitted to occur. The State responds simply that constructive possession is a well-recognized basis of liability for possession type offenses and is appropriate in this case.

Defendant acknowledges the line of cases holding that constructive possession is sufficient for purposes of most unlawful possession statutes. He attempts to distinguish those cases, however, on the ground that they involved possession of "contraband," such as drugs or weapons which could not be legally possessed under any circumstances. In the instant case, all of the weapons seized could have been legally possessed by anyone with a FOID card, such as his wife. Defendant contends that the State is attempting to prosecute him for nothing more than living in the same house where guns were kept by someone legally authorized to do so.

This argument might have some validity if, in fact, Rosemarie Hammer were the primary user of the guns and defendant did no more than sleep in the same room where they were kept. This was simply not the case, however. Rosemarie testified that defendant owned the guns prior to their marriage and that she never used them and in fact did not know how to use them. She applied for a FOID card, at her husband's suggestion, merely as a subterfuge to avoid the fact that defendant could not be issued a permit due to his prior conviction. Scott Hammer also testified that he had discussed using the guns with defendant. Finally, Officer Burgermeister testified that defendant admitted that the weapons were "his guns" and located another gun which was hidden in a towel. This evidence clearly establishes that defendant did much more than merely sleep in the house where his wife kept the guns.

■■■ Defendant was convicted of violating section 24—1.1(a) of the Criminal Code of 1961, which provides as follows:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." (Ill. Rev. Stat. 1989, ch. 38, par. 24—1.1(a).)

Both defendant and the State rely on cases arising under the unlawful use of weapons statute (Ill. Rev. Stat. 1989, ch. 38, par. 24—1). Under that section, possession of the weapon may be either actual or constructive. (*People v. Billings* (1977), 52 Ill. App. 3d 414, 422; *People v. O'Neal* (1975), 35 Ill. App. 3d 89, 91.) To prove possession, it is sufficient to show that the contraband was under

defendant's dominion or control. To do so, the State must establish defendant's knowledge of the contraband and his immediate and exclusive control of the area wherein it is located. (*People v. Williams* (1981), 98 Ill. App. 3d 844, 847.) Proof that others also used the premises is insufficient to overcome the finding of defendant's exclusive dominion and control. *Williams*, 98 Ill. App. 3d at 848; *People v. Janis* (1977), 56 Ill. App. 3d 160, 164.

■ Curiously, neither defendant nor the State cites to a line of more recent cases which have explicitly applied the constructive possession theory to the offense of unlawful possession of weapons by a felon. To sustain a conviction under this section, the State need only prove defendant's knowing possession of firearms and his prior felony conviction. (*People v. Elam* (1990), 197 Ill. App. 3d 8, 11-12; *People v. Bond* (1989), 178 Ill. App. 3d 959, 966.) These cases have consistently held that possession pursuant to this statute may be constructive. (*Elam*, 197 Ill. App. 3d at 12; *Bond*, 178 Ill. App. 3d at 966; *People v. Rangel* (1987), 163 Ill. App. 3d 730, 740.) As in other unlawful possession cases, constructive possession of a firearm by a felon is established by showing that defendant had knowledge of the weapon and that he exerted immediate and exclusive control over the area where the weapon was found. (*Elam*, 197 Ill. App. 3d at 12.) Although defendant's mere presence near the weapon is insufficient, control over the location gives rise to the inference that defendant possessed the weapon, which inference is not undermined by the presence of others in the vicinity. *Rangel*, 163 Ill. App. 3d at 740.

■ In the instant case, defendant does not contend that the State failed to prove his prior conviction. Moreover, the evidence establishes that the guns were found in the closet of the marital bedroom, an area over which defendant unquestionably had dominion and control. The fact that his wife and son may also have had access to the closet is insignificant, particularly in light of their testimony that they did not use the guns and that defendant did.

In *Elam*, guns were found in the apartment of defendant's girlfriend, which defendant frequented and in which he sometimes slept. As in the instant case, defendant supplied the officer with information concerning the location of the weapons. Although defendant testified at trial that the guns were his girlfriend's and he did not know of their existence, the court found that the jury, as the trier of fact, was entitled to discredit this explanation and find defendant guilty. *Elam*, 197 Ill. App. 3d at 12-13.

Here the trial court, sitting without a jury, was entitled to find that defendant knew of the guns and that they were under his dominion and control. Finding defendant guilty under these circumstances does not offend due process.

■ Defendant also contends that the court erroneously admitted his son's testimony regarding prior conversations with defendant concerning the guns. Defendant's "argument" on this point is confined to one paragraph in his statement of facts and another paragraph in the argument portion under a subheading relating to the constructive possession argument. Except for two constitutional provisions, neither paragraph contains any citation to relative authority. Thus, this argument is waived. 134 Ill. 2d R. 341(e)(7).

Even if the argument were not waived, we would find no error in the admission of the testimony. Defendant postulates that since there was no evidence that he physically handled any of the weapons on September 6, 1990, his conviction must have rested on Scott's testimony that his father discussed using the guns for hunting on a prior occasion "a year, two years ago," and that he was prejudiced by the admission of testimony relating to an offense on a date not named in the charging instrument. We have already determined that the evidence was sufficient to establish defendant's constructive possession of the weapons on September 6, 1990, the date named in the indictment. Moreover, defendant's only objections to this testimony in the trial court were based on lack of foundation and relevance. The State promptly provided an adequate foundation. Furthermore, the evidence was relevant to show that defendant knew of the guns' existence, as he had used them on prior occasions.

For the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.