THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. T.C. ODEN, Defendant-Appellant.

Fifth District   No. 5—92—0469

Opinion filed May 12, 1994.

42

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Mary H. Doyle, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, Thomas C. Oden, was charged in the circuit court of St. Clair County with unlawful use of weapons by a felon. (Ill. Rev. Stat. 1990, ch. 38, par. 24—1.1.) The basis of the charge was that Oden was seen outside a nightclub holding an "Uzi-type" weapon. After a trial by jury, Oden was found guilty and sentenced to four years' imprisonment.

At trial, Sergeant Gregory Cox of the East St. Louis police department testified that on the night of June 23-24, 1991, he heard gunfire near the Bachelor's Lounge, a nightclub just down the street from Cox's residence. As he was leaving for work the following morning, he looked toward the Bachelor's Lounge, which he could see from his front porch. Cox saw defendant and defendant's brother John holding "Uzi-type" weapons, and he saw Jack Keel holding a sawed-off shotgun. All three were standing beside a parked car, between the car and the front door of the lounge.

Cox called in a report on his radio and told the dispatcher that he was "going in." As he ran to his car, the three men ran into the lounge. Cox sped to the front door of the lounge and radioed the dispatcher that he was going in without backup. As he got out of the car, the three came back out of the lounge. Cox drew his weapon and ordered all three to lie down. At this point, backup officers arrived. Defendant was handcuffed and taken inside. A subsequent search of the lounge produced two Uzis, a shotgun, and three pistols. Cox

identified the Uzis and the shotgun as the weapons he had seen the three men holding outside the lounge.

Horace Smith, a neighbor of Cox's, testified that on June 24, 1991, between 6:15 and 6:30 a.m., he was on his way to work when he saw defendant in the doorway of the Bachelor's Lounge holding "an Uzi or a shotgun." Defendant tried to wave Smith down, but Smith did not stop because of the gun. Smith stopped at the police station to report "problems in the neighborhood." Smith continued on to work, but after a short while he returned home because he was worried about his neighborhood. Upon arriving home, he saw Cox coming out of his house. Cox walked to the lounge, and Smith went to get a State trooper. By the time the trooper got to the lounge, backup had arrived.

Detective Marion Hubbard testified that on June 24, 1991, he responded to a dispatch to assist Cox at the Bachelor's Lounge. Upon arriving, he saw Cox with three suspects in custody. Hubbard entered the lounge, where he found a sawed-off shotgun behind a door. Later, Officer William McGlown called Hubbard over to the bar, where he found two Uzis hidden in a beer-cooler box behind the bar. In addition, three pistols were found during a search of the bar.

Officer McGlown testified that on June 24, 1991, he assisted in a search of the Bachelor's Lounge. During the search, he found two Uzis in a beer-cooler box behind the bar.

Carlton Davis, owner of the Bachelor's Lounge and defendant's stepfather, testified that he did not own the two Uzis or the shotgun, nor did he own any of the pistols found during the search. He stated that both defendant and Keel were employees and had keys to the bar.

Alzada Carr testified that around 8 a.m. on June 24, 1991, a nephew ran up to her at her house and told her something was happening on the corner where the Bachelor's Lounge was located. She went outside where she could see the front door of the lounge and saw defendant and John Oden sitting on a car in front of the lounge. After 5 or 10 minutes the police arrived. Prior to their arrival, Carr saw no guns.

Fred Mason, the East St. Louis police department jailer, testified that between 6:40 and 6:45 a.m. on June 24, 1991, he was driving to work when he saw defendant, John Oden, and Jack Keel. He waved at defendant and defendant waved back. Mason saw no one with a gun.

Officer Alicia Bruce testified that on June 24, 1991, between midnight and 7 a.m., she was sent to the Bachelor's Lounge three or four times. At 12:55 a.m., she responded to a complaint from John

Oden and, upon arriving, discovered that he was injured. He stated that he had been shot, and he went to the hospital. At 2:58 a.m. defendant complained that shots had been fired at the Bachelor's Lounge. Upon responding, Bruce and her partner found defendant unarmed but saw fresh "bullet dents" in the rear quarter panel and window of a car parked in front of the lounge.

Officer James Jarrett testified that about 7:51 a.m. on June 24, 1991, he received a report of shots fired near the Bachelor's Lounge. He arrived around 8 a.m. and found two black males standing in front of the lounge. He asked them if any shots had been fired, and they indicated that shots had been fired earlier that night, but none had been fired recently.

Jessie Oden, defendant's brother, testified that several days prior to defendant's arrest he had been attacked by Arvell Mosley and two other men. Arvell Mosley chased Jessie Oden up the street and shot at him. He escaped and made his way safely back to the lounge. Later, Arrie Jenry Mosley, Arvell's grandmother and Cox's neighbor, shot at Jessie. Jessie Oden testified that although Arrie Mosley admitted shooting at him and trying to kill him, Cox arrested him instead.

Defendant testified that on the night of June 21, 1991, Arvell Mosley fired a pistol near the front door of the Bachelor's Lounge, and he made Mosley leave. Mosley later returned and struck defendant, but Mosley's grandmother came and took him away. Later that night, Arvell returned with some friends and did more shooting. Sammy Reeves entered the bar and drew a gun, and defendant defended himself with a baseball bat. When police arrived in response to his complaint, they arrested defendant and his brothers, Jessie and Larry.

On the night of June 23, 1991, defendant's house was burglarized. He took his family to Carlton Davis' house and then went to watch the lounge. After Davis closed the lounge around 11 p.m., defendant went to file a police report on the burglary of his house, returning to the lounge around 12:45 a.m. He saw that an air conditioner had been pushed out of a window. While he and John Oden put it back in the window, Jack Keel went to unlock the door. At about 12:50 a.m., shots were fired at them from Cox's front yard. Cox's son Damon, Arvell Mosley, and several others were in Cox's front yard at the time. Keel and the Oden brothers ran into the bar and called the police. Officer Bruce took a report from John Oden, and Sergeant Isadore Chambers took a report from defendant.

Several hours later, more shots were fired at the bar. T.C. Oden again called the police, and Bruce and Chambers again responded.

John Oden had been shot and he went to the hospital, returning to the lounge around 4:45 a.m.

Sometime after dawn, the three men were outside sitting on a car when they saw Cox come out of his house, look at them, get in his car, and drive to the front of the lounge. Cox got out of his car, drew two guns, and forced all three men to lie on the ground. Numerous other officers arrived, and the three were taken into the bar and forced to lie down. Defendant stated that he saw police "pulling up guns from everywhere" and lining them up on the bar. Defendant denied ever having seen the guns before.

During deliberations, the jury gave the bailiff a note asking the following question:

"Can the jury have a copy of T.C.'s testimony?"

The court clerk telephoned the judge, who was in a meeting. The judge told her to inform the jury that it could not have a copy of defendant's testimony because it was not yet transcribed. Subsequently, the jury sent out another note asking the following questions:

"(1) Does the fact that a person knows weapons are present in a building constitute possession?

(2) If they're in a building where weapons are knowingly present, and if that person is in charge of said building, does it constitute possession?

(3) What is possession?"

The clerk gave these questions to the court reporter and left the courtroom. When she returned, the court reporter handed her a typewritten answer instructing the jury to rely on the instructions already given. The jury subsequently returned a verdict of guilty.

At the request of defendant's appellate counsel, a supplemental hearing was held on July 19, 1993, to determine whether Supreme Court Rule 608(a)(8) had been complied with. Rule 608(a)(8) provides that the record on appeal must contain the report of proceedings including, *inter alia*, communications from the jury during deliberations and responses and supplemental instructions to the jury. (134 Ill. 2d R. 608(a)(8).) The trial court ruled that while it failed to comply with Rule 608, its responses to the jury were correct.

On appeal, defendant argues first that he was denied a fair trial by the trial court's refusal to answer the jury's questions. We agree.

■ Whether to issue supplemental instructions in response to questions from the jury rests with the discretion of the trial court. (*People v. Batchelor* (1990), 202 Ill. App. 3d 316, 334, 559 N.E.2d 948, 960; *People v. Stevenson* (1990), 198 Ill. App. 3d 376, 387, 555 N.E.2d 1074, 1080.) The trial court has a duty, however, to provide

supplemental instructions where clarification is requested, the original instructions are incomplete, and the jurors are manifestly confused. (*People v. Reid* (1990), 136 Ill. 2d 27, 39, 554 N.E.2d 174, 179; *People v. Patten* (1992), 240 Ill. App. 3d 407, 417, 608 N.E.2d 351, 358; *People v. Hemphill* (1992), 230 Ill. App. 3d 453, 462, 594 N.E.2d 1279, 1285; *People v. Gathings* (1981), 99 Ill. App. 3d 1135, 1138, 425 N.E.2d 1313, 1316; *People v. Morris* (1980), 81 Ill. App. 3d 288, 290, 401 N.E.2d 284, 286.) A trial court may decline to answer a jury's questions if the instructions are readily understandable and sufficiently explain the relevant law, when further instruction would serve no useful purpose and could potentially mislead the jury, where the inquiry involves a question of fact, and where the question is ambiguous and an answer or explanation would require a colloquy between the court and the jury, further explanation of facts, or expression of the trial court's opinion on the evidence or the outcome of the case. (*Reid*, 136 Ill. 2d at 39, 554 N.E.2d at 179-80; *People v. Raue* (1992), 236 Ill. App. 3d 948, 952, 602 N.E.2d 846, 849; *People v. Shannon* (1990), 206 Ill. App. 3d 310, 317, 564 N.E.2d 198, 203; *People v. Santiago* (1987), 161 Ill. App. 3d 634, 640, 515 N.E.2d 228, 233; *People v. Palmer* (1982), 111 Ill. App. 3d 800, 807, 444 N.E.2d 678, 683.) Nevertheless, even where proper instructions have been given, where the jury raises explicit questions on a point of law, the trial court has a duty to attempt to clarify the issue in the minds of the jury. *Patten*, 240 Ill. App. 3d at 417, 608 N.E.2d at 358; *People v. Childs* (1992), 230 Ill. App. 3d 993, 998, 596 N.E.2d 108, 111, *appeal allowed* (1992), 146 Ill. 2d 635, 602 N.E.2d 461; *People v. Walker* (1992), 227 Ill. App. 3d 102, 105, 590 N.E.2d 1018, 1020; *People v. Willis* (1991), 217 Ill. App. 3d 909, 921, 577 N.E.2d 1215, 1222; *People v. Sandy* (1989), 188 Ill. App. 3d 833, 842, 544 N.E.2d 1248, 1253.

The present case is very similar to *Morris*. In *Morris*, the defendant was charged with burglary. The jury was instructed as to the elements of burglary and that defendant's participation in the burglary could be inferred from his unexplained possession of recently stolen property. No accountability instruction was given. During the course of deliberations, the jury sent the trial court a note asking whether a person could be presumed guilty of burglary where he comes into possession of property illegally obtained by another but he never illegally entered the building or removed the property. The trial court referred the jury to the instructions already given, and the jury subsequently returned a verdict of guilty.

On appeal, the court in *Morris* held that the jury's question clearly evidenced confusion concerning the inference permitted by possession of recently stolen property and the possibility of convicting

defendant on an accountability theory, and the *Morris* court concluded that the trial court's admonition to follow the instructions given was insufficient to resolve that confusion. *Morris*, 81 Ill. App. 3d at 291, 401 N.E.2d at 286.

    ■ In the present case, defendant was charged with unlawful possession of a weapon by a felon in that "he, a person who had been convicted of a felony under the law of Illinois ***, knowingly possessed on his person a firearm." Although the charge may be based upon constructive possession (*People v. Elam* (1990), 197 Ill. App. 3d 8, 554 N.E.2d 661; *People v. Assenato* (1989), 186 Ill. App. 3d 331, 542 N.E.2d 457), the State proceeded at trial on the theory of actual and direct possession based upon the testimony of Cox and Smith. The jury instruction stated that a person commits the offense of unlawful use of weapons when he knowingly carries or knowingly possesses a firearm, and that to sustain the charge, the State had to prove beyond a reasonable doubt that defendant knowingly possessed a firearm. The questions asked by the jury, however, clearly demonstrate that the jurors were confused with respect to the legal theory of the State's case. Constructive possession was not an issue, yet they were evidently considering it. Given the jury's obvious confusion, the trial court had a duty to attempt to clarify the issue in the minds of the jury. Referring the jury to the instructions already given, even though they were accurate and complete, was insufficient to resolve this confusion and constitutes reversible error.

    Even if constructive possession had been an issue, we would be forced to conclude that the trial court's responses to the jury's inquiries were insufficient. Where a defendant's alleged criminal possession is constructive, the State must prove defendant's knowledge of the presence of the weapon and exclusive control over the area where it was found. (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936.) It is clear from the jury's questions that it did not fully understand the theory of constructive possession, and the trial court would have had a duty to clarify the meaning of "constructive possession" and what was necessary to prove it.

    Defendant also argues that he was denied his right to be present at a critical stage in the proceedings where the trial judge gave supplemental instructions to the jury off the record and outside the presence of defendant or his counsel.

    A defendant has the right to be present at all proceedings affecting his substantial rights. (*People v. Bryant* (1988), 176 Ill. App. 3d 809, 814, 531 N.E.2d 849, 852.) Where the record shows the presence of a defendant when the trial commences, his presence is presumed at all subsequent proceedings unless the record specifically

48

indicates otherwise. (*People v. Harvey* (1981), 95 Ill. App. 3d 992, 999, 420 N.E.2d 645, 651.) In the present case, the record clearly demonstrates that both Oden and his counsel were present at trial, and that Oden's counsel was present the following morning when the case was submitted to the jury. It does not affirmatively show that Oden or his counsel was absent when the trial court ruled on the jury's request.

At the supplemental hearing, however, defendant's counsel testified that he had no recollection of ever being contacted about the jury's requests or discussing them with either the court or Oden. The prosecutor also stated that he had no recollection of the jury's requests or the trial court's response thereto. The trial court indicated that during the course of a meeting with Mayberry and Associates, a contractor developing a computer system for the court system, two phone calls were received dealing with questions from the jury. The trial court stated that its normal policy when outside the courtroom is to have the attorneys present in a telephone conference or, if that was not possible, to make a record upon returning to the courtroom. The trial court indicated that no record had been made and that it had no memory of doing so, and the court opined that it failed to comply with Supreme Court Rule 608. Etta Green, the court clerk, testified that she had no memory of the attorneys being contacted or whether defendant or his counsel was present.

■ We conclude that the evidence adduced at the supplemental hearing overcomes any presumption that Oden or his counsel was present when the trial court received and answered the jury's questions. We further conclude that because several of the questions related to the essential legal theory of the case, they affected defendant's substantial rights and he was prejudiced by the trial court's answering of those questions without his presence or that of his attorney.

The State correctly notes that defendant failed to raise either of the issues above in a post-trial motion, and the State argues that they are waived pursuant to *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124. Under Supreme Court Rule 615(a), however, a reviewing court may take notice of plain error or defects affecting substantial rights even though they were not properly presented for review (134 Ill. 2d R. 615(a)). The errors described above have both been held to be defects affecting substantial rights, and we therefore find the waiver rule inapplicable. *People v. Tansil* (1985), 137 Ill. App. 3d 498, 500, 484 N.E.2d 1169, 1171; *People v. Morris* (1980), 81 Ill. App. 3d 288, 290, 401 N.E.2d 284, 286.

The defendant raises several other issues in his appeal, but given our disposition of the arguments above, we need not address them.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

WELCH and CHAPMAN, JJ., concur.